# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARITY OWUSU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 8898 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| COOK COUNTY and SEIU LOCAL 73, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Charity Owusu, brings this lawsuit against her employer, defendant Cook County, and labor union, defendant SEIU Local 73 ("SEIU"), alleging that they discriminated against her on the basis of her national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Both defendants have filed motions for summary judgment. For the following reasons, the Court grants the motions.

## BACKGROUND

On September 18, 2002, plaintiff, who is from Ghana (Pl.'s LR 56.1(b)(3)(C) Stmt., ¶ 28, ECF No. 83) applied for a position as an evening-shift telemetry technician ("teletech") at John Stroger, Jr., Hospital of Cook County ("Stroger Hospital").[1] (Cook County's LR 56.1(a)(3) Stmt. ¶¶ 2, 16, ECF No. 62.) Plaintiff applied in response to a job posting that specifically identified the position as on the "3 PM – 11 PM" shift. (*Id*. ¶ 16; *see* SEIU's LR 56.1(a)(3)

---

[1] Stroger Hospital has no independent legal existence separate from Cook County, which is why Cook County is the defendant in this case. *See, e.g., Eyiowuawi v. John H. Stroger's Hosp. of Cook Cty.*, No. 12 CV 6492, 2014 WL 380891, at *3 (N.D. Ill. Feb. 3, 2014).

Stmt., Ex. B, Pl.'s Dep., Dep. Ex. 6, ECF No. 72-3.) Plaintiff started work as a teletech at Stroger Hospital on December 2, 2002. (Cook County's LR 56.1(a)(3) Stmt. ¶ 17.)

In 2007, Alisia Hill, the teletech coordinator at the time, asked for volunteers to work the day shift, which ran from 7:00 a.m. to 3:00 p.m. (*Id.* ¶¶ 8, 19.) Plaintiff volunteered by responding in writing to Hill's request, and plaintiff began working the day shift. (*Id.* ¶¶ 20-22.) Other than the written request to Hill, plaintiff submitted no other documentation to anyone and had no discussions with anyone at Cook County about transferring to the day shift. (SEIU's LR 56.1(a)(3) Stmt. ¶¶ 23-25.) She never formally re-applied for a day-shift teletech position, and she always had a personnel ID number associated with the evening shift, which meant that any assignment to another shift was technically temporary. (Cook County's LR 56.1(a)(3) Stmt. ¶¶ 26-27.)

In early 2013, two teletechs who typically worked the evening shift, Alicia Grayson and Lorraine Cook, went on leave, which caused a staffing shortage on the evening shift. (*Id.* ¶¶ 30-31.) Cook County first attempted to address the problem by changing the teletechs' shifts from eight to twelve hours, but SEIU objected, asserting that any such change would violate the Collective Bargaining Agreement ("CBA"). (*Id.* ¶ 34.) Changing tack, Hill decided to request volunteers again, this time seeking teletechs who would be willing to move from the day shift to the evening shift. (*Id.* ¶ 35.) But this time, unlike in 2007, no one volunteered. (*Id.*) On March 29, 2013, Hill sent plaintiff a memo in which she explained that because there were no volunteers for the evening shift, and because plaintiff had originally been hired to work the evening shift, Cook County was going to address the shortage by returning plaintiff to the evening shift. (*Id.* ¶¶ 36-37.)

2

On April 3, 2013, SEIU filed a grievance on plaintiff's behalf. (*Id.* ¶ 38.) At "step one" of the grievance process, Hill denied the grievance, but SEIU appealed the denial to a hearing officer, and, after a "step two" hearing, the hearing officer orally ruled that plaintiff could stay on the day shift. (*Id.* ¶ 39.) Plaintifff asserts that the basis for the decision was at least partially seniority (Pl.'s LR 56.1(b)(3)(C) Stmt., ¶ 27, ECF No. 83), but no written decision or other record of the step two hearing officer's decision survives, and it is unclear if any such record was ever created. (Cook County's LR 56.1(a)(3) Stmt. ¶ 41.)

On May 16, 2013, Cook County informed Lylonnie Fair, a teletech who had been hired in 2003 to work the day shift, that she was being reassigned to the evening shift. (SEIU's LR 56.1(a)(3) Stmt. ¶ 45; Cook County's LR 56.1(a)(3) Stmt. ¶ 18.) SEIU filed a grievance on Fair's behalf, asserting that Fair should not be moved from the shift to which she applied and for which she was hired when "there is a temporary employee working" on the day shift who can "go back to the shift they were on originally." (Cook County's LR 56.1(a)(3) Stmt. ¶ 44; *see* SEIU's LR 56.1(a)(3) Stmt. ¶ 46.)

Brenda Woodall was the SEIU representative who had assisted plaintiff with the grievance process and attended plaintiff's step two hearing. (SEIU's LR 56.1(a)(3) Stmt. ¶¶ 40-41.) During the summer of 2013, Karen Webster took over from Woodall as the SEIU representative for the Stroger Hospital teletechs. (*Id.* ¶ 47.)

As Webster attempted to get up to speed, she learned from a union steward and longstanding Cook County employee that the predominant past practice had been to determine shift assignments according to the shift for which an employee was hired. (*Id.* ¶ 49.) She reviewed Fair's grievance, number 13-072, and noticed that it was related to grievance number 13-047, plaintiff's grievance. (*Id.* ¶ 50.) Webster reviewed plaintiff's grievance file and found

3

that the grievance was denied at step one and advanced to step two, but the file contained no decision for the step two hearing. (*Id.*) Webster requested a copy of the step two decision from Cook County, but she received no response, and she assumed, based on her prior experience, that that meant that the grievance had been denied. (*Id.* ¶¶ 51-52.)

After Fair's grievance was denied, Webster advanced it to "step 3" of the grievance process. (*Id.* ¶ 53.) The parties met to discuss the grievance on December 10, 2013, and at that meeting they reached a settlement by agreeing to return all teletechs to the shifts for which they were hired. (*Id.* ¶¶ 54, 56.) The parties reviewed plaintiff's personnel file and determined that she was originally hired for the evening shift, her personnel ID was associated with the evening shift, and her assignment to the day shift had only been temporary. (*Id.* ¶ 54; *id.*, Ex. G, Webster Decl., ¶ 10.) As a result of the settlement agreement, Lylonnie Fair was permitted to return to the day shift, Alicia Grayson was required to return to the night shift, and plaintiff was required to return to the evening shift. (*Id.* ¶¶ 57-58.) Lylonnie Fair and Alicia Grayson are of American national origin. (Pl.'s LR 56.1(b)(3)(C) Stmt., ¶ 28, ECF No. 83; Cook County's LR 56.1(a)(3) Stmt. ¶ 50.)

Plaintiff received a letter informing her of the terms of the settlement agreement on or about January 21, 2014. (SEIU's LR 56.1(a)(3) Stmt. ¶ 60.) She contacted SEIU about the matter on January 28, 2014, and SEIU Local 73 vice president Betty Boles contacted Kevin Frey, labor counsel for Cook County, on plaintiff's behalf. (*Id.* ¶ 63.) On Feburary 7, 2014, Frey informed Boles that a teletech position during the day shift was available at Provident Hospital, and he offered to transfer plaintiff to that position. (*Id.* ¶ 64.) Boles initially rejected the offer as inadequate, but when she learned that Provident Hospital was actually closer to plaintiff's residence than Stroger Hospital, she asked Frey to hold the position open. (*Id.* ¶ 65.) Boles

informed plaintiff of the opportunity, but plaintiff responded that she would not accept a position at Provident Hospital. (*Id.* ¶ 66.)

On January 23, 2014, Cook County received a letter from plaintiff complaining that on January 15, 2014, Francine Crater, a clerk, followed plaintiff as she walked through the hospital, called her an "African B," and told her, "I can't stand you" and "there's no way you can work in the morning." (Cook County's LR 56.1(a)(3) Stmt. ¶ 71.) Clerks handle patient files; they do not supervise teletechs and they are paid less than teletechs. (*Id.* ¶ 73.) Plaintiff's supervisor Tedra Davis met with plaintiff and Crater to discuss the incident, and she investigated plaintiff's allegations by speaking to other employees who were working on the day of the alleged incident, but her investigation found that plaintiff's allegations against Crater were "without merit," as she explained to plaintiff in a February 7, 2014 letter. (*Id.* ¶¶ 74-75.) Plaintiff claims to have never received the letter. (Pl.'s LR 56.1(b)(3)(C) Stmt., ¶ 16, ECF No. 83.) Nobody else at Cook County ever said anything disparaging directly to her based on her national origin, although a clerk named Sonia informed plaintiff in May 2013 that another clerk, Rose Mege, had said in a break-room conversation, "I am so tired about this African B that try to come to our country and take our job," and she was "so happy that [Lylonnie Fair] win the case." (Cook County's LR 56.1(a)(3) Stmt., Ex. B., Pl.'s 10/27/15 Dep., at 62:2-66:3.) Plaintiff reported what Sonia told her to a supervisor, but she is unaware if Cook County took any further action. (*Id.*, Ex. B, at 65:10-68:10.)

In May 2014, plaintiff went to Orlando Brown's office to review the grievance logbook, and she got a copy of her personnel file. (*Id.* ¶¶ 77-78.) Plaintiff could not find documentation of the second step of her grievance, nor has she ever seen any such documentation. (*Id.* ¶¶ 78-79.)

5

## ANALYSIS

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court may not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Plaintiff claims that Cook County and SEIU discriminated against her on the basis of her national origin. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, Title VII makes it unlawful for a labor organization "to discriminate against[] any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c). Title VII also makes it unlawful for an employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a); *see Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006) ("This type of discrimination is commonly known as 'retaliation.'").

### I. DISCRIMINATION BY COOK COUNTY

To state a *prima facie* case of discrimination based on national origin, plaintiff must show that (1) she was subjected to some adverse employment action, (2) her job performance was satisfactory, and (3) there is evidence to support a reasonable inference that Cook County took the adverse employment action against her because of a discriminatory motive based on

6

plaintiff's Ghanaian national origin. *See Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169-70 (7th Cir. 1998).

Cook County contends that plaintiff fails to establish that she suffered any adverse employment action that is actionable under Title VII. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (citing *O'Neal v. City of Chi.*, 392 F.3d 909, 911 (7th Cir. 2004)). An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007). To be actionable under Title VII, an adverse employment action must "materially alter the terms or conditions of employment," *Porter v. City of Chi.*, 700 F.3d 944, 954 (7th Cir. 2012), and it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009) (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)).

The Seventh Circuit has explained that merely changing an employee's work schedule is not, by itself, an actionable adverse action. *See Porter*, 700 F.3d at 954 (citing *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001)). Work schedule changes or shift changes may be actionable adverse actions only in "unique circumstances," such as where the employer implements the change to exploit a "known vulnerability," *Porter*, 700 F.3d at 955 (citing *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662-63 (7th Cir. 2005) (employer allegedly altered plaintiff's schedule despite knowledge that she could not work certain hours because she had to care for her special-needs son)), but plaintiff has made no suggestion of any unique

7

circumstances or known vulnerabilities in this case. The adverse action of which she complains is a simple shift change, which is not actionable under Title VII.[2]

Plaintiff also suggests that her discrimination claim is actionable because she was subjected to a hostile work environment based on her national origin, but this theory requires her to demonstrate that "(1) her work environment was both objectively and subjectively offensive, (2) the harassment complained of was based on her [national origin]; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability," such as knowledge or participation by a supervisor. *See Porter*, 700 F.3d at 955 (citing *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009)). Plaintiff does not complain of the sort of severe or pervasive harassment that might be actionable under Title VII. The only allegations that might support a hostile work environment claim are the allegations of plaintiff's altercation with Francine Crater and the comments of Rose Mege. But these were only two isolated incidents in more than a decade of employment at Cook County, and isolated incidents will not support a hostile work environment claim unless they are "extremely serious." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 648 (7th Cir. 2011) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). One verbal altercation with a co-worker who used offensive language and an offensive comment made by another co-worker out of plaintiff's hearing[3] are neither pervasive nor "extremely serious." *See Ellis*, 650 F.3d at 648-49 (reviewing "case-law guideposts," which showed that

---

[2] Even if the shift change were an adverse action, the Court would conclude that plaintiff did not present sufficient evidence of discriminatory motive or intent to survive summary judgment. As the Court will discuss further in addressing SEIU's motion for summary judgment, there is no evidence that the shift change was anything other than Cook County's attempt to resolve, on an objective, impartial basis, a difficult staffing problem that was sure to leave at least one of the teletechs unhappy.

[3] Additionally, although the Court need not address whether Cook County had a discriminatory motive for forcing plaintiff to change to the evening shift because it has concluded that the shift change was not an actionable adverse action, the Court notes parenthetically that the allegations of offensive comments by Rose Mege and Francine Crater provide no support for any inference of any discriminatory motive underlying the shift change because none of the people involved in the Mege or Crater incidents was also involved in the shift change, nor does any other evidence connect the shift change to the offensive comments.

plaintiffs' "limited number of claims [of insensitive comments were] insufficiently severe to support a hostile work environment claim"); *see also Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir. 1993) (two instances of harassment not pervasive).

Plaintiff's chief argument in response is that defendant's 30(b)(6) witness did not have sufficient foundation for her testimony, but there is no need to reach this argument because plaintiff has failed to carry her burden of introducing sufficient evidence to make a *prima facie* case. Plaintiff's discrimination claim cannot survive Cook County's motion for summary judgment.

## II. DISCRIMINATION BY SEIU

To establish a Title VII claim against SEIU, plaintiff's labor union, plaintiff must show that (1) Cook County violated the collective bargaining agreement between Cook County and SEIU; (2) SEIU breached its own duty of fair representation by letting the breach go unrepaired; and (3) some evidence indicates that discriminatory animus based on national origin motivated SEIU. *See Greenslade v. Chi. Sun-Times, Inc.*, 112 F.3d 853, 866 (7th Cir. 1997). Plaintiff contends that a jury could reasonably infer that SEIU acted with discriminatory animus based on the fact that plaintiff was treated differently from Lylonnie Fair, who was permitted to stay on the day shift and who is American.[4] *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (plaintiff may make out *prima facie* case under Title VII by demonstrating that she was a member of a protected class meeting legitimate expectations who suffered an adverse employment action and was treated less favorably than similarly-situated individuals who were not members of the protected class) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)).

---

[4] Plaintiff also brought a retaliation claim against SEIU for failure to file a grievance on plaintiff's behalf in 2014, but she concedes in her response brief that there is no genuine issue of material fact as to that claim.

SEIU contends that (1) Cook County did not violate the CBA by moving plaintiff to the evening shift, as the CBA does not entitle employees to work the shift of their preference based on seniority; (2) far from breaching its duty of fair representation, SEIU did everything it could for plaintiff under the circumstances, including finding a day-shift position for plaintiff at another hospital closer to her home; and (3) SEIU had a legitimate, nondiscriminatory reason for agreeing to allow Lylonnie Fair to remain on the day shift instead of plaintiff, and there is no evidence that this reason is pretext. *See Coleman*, 667 F.3d at 845 (if defendant articulates a legitimate, nondiscriminatory reason for its action, burden shifts to plaintiff to prove that the reason is pretext).

The Court tends to agree with SEIU on all three points, but even assuming that Cook County did violate the CBA and that SEIU breached its duty of fair representation, the evidence does not support a reasonable inference of discriminatory animus because the fact that all teletechs are hired and designated for a particular shift provided a legitimate, nondiscriminatory reason for the settlement agreement, and plaintiff has not shown that reason to be pretext.

This dispute arose because Cook County was facing a staffing shortage on the evening shift because two evening-shift teletechs went on leave. When Cook County first attempted to move plaintiff to the evening shift to address the shortage, SEIU brought a grievance on plaintiff's behalf, which was successful at step two, and plaintiff was permitted to remain on the day shift.[5] However, Cook County still had to address the staffing shortage on the evening shift,

---

[5] SEIU contends that Karen Webster took over for Brenda Woodall as the union representative for the Stroger teletechs after this grievance was resolved, and Webster mistakenly believed that plaintiff's grievance was initially denied, as she erroneously stated in a November 7, 2013 letter. (SEIU LR 56.1(a)(3) Stmt., Ex. G, ¶ 9.) It is unclear what role this mistake is supposed to have played in the proceedings on Fair's grievance or what Webster understood Fair's grievance to be about if she believed that plaintiff's grievance had been denied and plaintiff would be required to move to the evening shift; requiring plaintiff to move to the evening shift rather than Fair is the very relief that Fair all but explicitly requests in her grievance. (Cook County's LR 56.1(a)(3) Stmt. ¶ 44.) For purposes of the present motion for summary judgment, the Court assumes that SEIU did know that plaintiff would not be

so it attempted to move Lylonnie Fair to the evening shift, which caused Fair to file a grievance. In the course of proceedings on Fair's grievance, the parties came to understand that (a) the CBA did not give teletechs the right to work their preferred shift based on seniority, (b) teletechs are hired for specific shifts, and (c) plaintiff was hired for the evening shift. In order to correct the imbalance among the teletechs, too many of whom were working the day shift, the parties decided to settle the dispute by requiring all teletechs to work the shift for which they were hired.

There is nothing discriminatory about this settlement on its face. The parties settled the dispute on a basis totally unrelated to the national origin of the teletechs. One or some of the teletechs had to change shifts in order to ensure that the hospital was adequately staffed, and the parties determined that the appropriate basis for deciding who would work when was to require the teletechs, each of whom had applied for and accepted a position on a specific shift, and none of whom had effected a complete and permanent change of the shift for which they were designated, to work the shift to which they had applied.

Plaintiff points to no evidence that this apparently legitimate, non-discriminatory reason for the action was pretext. Although the CBA recognizes seniority in certain contexts, plaintiff has not shown, and the Court does not see, where it provides that seniority should come into play in determining what shift a particular employee will work; if anything, that determination appears to be left up to Cook County (SEIU LR 56.1(a)(3) Stmt. ¶ 30). Further, plaintiff was not the only employee displaced by the settlement agreement: Alicia Grayson, who is American, also had to change shifts in order to comply with the agreement that teletechs would work the shift for which they were hired.

---

required to move to the evening shift except as a consequence of the settlement agreement it reached with Cook County in order to resolve Fair's grievance.

Defendants have presented evidence that, facing a delicate situation in which at least some of the teletechs would be forced to change shifts against their will, they found an objective basis for deciding who should work which shift in the fact that the teletechs were hired for particular shifts. Plaintiff does not present sufficient evidence that this decision was a pretext for discrimination; on the contrary, no evidence undermines SEIU and Cook County's position that the parties did the best they could to reach a fair settlement of a difficult staffing problem. Plaintiff's claim of discrimination against SEIU cannot survive SEIU's motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the Court grants Cook County's motion for summary judgment [60] and SEIU's motion for summary judgment [67]. Civil case terminated.

**SO ORDERED.**                                               **ENTERED: September 29, 2016**

**HON. JORGE L. ALONSO**
**United States District Judge**